UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BENJAMIN S., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )    No. 1:22-cv-00272-NT |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
|       Defendant | ) |

### REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability (SSD) appeal contends that he did not receive an adequate hearing because of his lack of legal representation and that the Administrative Law Judge (ALJ) erred in evaluating both the opinion evidence of record and the Plaintiff's impairments. *See* Statement of Errors (ECF No. 11) at 1. I discern no error and recommend that the Court affirm the Commissioner's decision.

### I. Background

The ALJ found, in relevant part, that the Plaintiff (1) was insured for SSD benefits only through March 31, 2018, *see* Record at 30; (2) had medically determinable impairments of anxiety disorder and depressive disorder through March 31, 2018, *see id.*; had no severe impairment or combination of impairments through March 31, 2018, *see id.* at 31; and therefore had not been disabled at any time from his alleged onset date of disability, January 1, 2013, through his date last

1

insured for benefits, March 31, 2018, *see id.* at 35. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

### A. Lack of Representation by an Attorney

The Plaintiff first seeks remand on the basis that he was not adequately informed prior to his hearing of his right to representation by an attorney, as a result of which he appointed his treating physician, Barbara W. Reeve, M.D., as his non-attorney representative. *See* Statement of Errors at 5. He asserts that even after an extensive colloquy with the ALJ at the hearing, he did not understand his right to

representation by an attorney, the meaning of the terms "representative" and "witness," or the difference between them, and neither he nor Dr. Reeve understood that it was crucial to prove that he was disabled as of his date last insured to qualify for SSD benefits. *See id.* at 12. He argues that "the ALJ's failure to adequately ensure that [he] knowingly waived his right to seek other representation" deprived him of due process, warranting remand for a new hearing and decision. *See id.* at 12-13. I am unpersuaded.[1]

"The right to counsel in a disability benefits hearing is significantly different than the same right in a court proceeding." *Evangelista v. Sec'y of Health & Hum. Servs.*, 826 F.2d 136, 142 (1st Cir. 1987) (cleaned up). "Thus, it is clear that the absence of counsel, without more, creates no basis for remand." *Id.* Instead, "remand for want of representation is necessitated only where there is a showing of unfairness, prejudice or procedural hurdles insurmountable by laymen." *Id.* (cleaned up).

As the Commissioner observes, *see* Opposition (ECF No. 15) at 3-4, the Plaintiff was sent notices dated November 12, 2020, and January 26, 2021—more than a year before his February 1, 2022, hearing—advising that he could "choose to have a representative help" him and that his "local Social Security office" could give him "a list of groups" that could help him "find a representative," Record at 83-84, 90. Those notices also explained that many representatives charge fees, some charge fees only

---

[1] At oral argument, the Plaintiff's counsel also contended that the ALJ failed to adequately develop the record. Because that point was raised for the first time at oral argument, it is waived. *See, e.g., Faye W. v. Berryhill*, No. 1:17-cv-00485-NT, 2019 WL 259435, at *5 (D. Me. Jan. 18, 2019) (rec. dec.) ("Issues or claims not raised in [a Social Security claimant's brief] will be considered waived and will not be addressed by this court." (cleaned up)), *aff'd*, 2019 WL 489084 (D. Me. Feb. 7, 2019).

if a claimant receives benefits, some represent claimants for free, and representatives usually cannot charge a fee unless the Social Security Administration (SSA) approves it. *See id.*

The Plaintiff acknowledged on November 24, 2020, that he understood his right to be represented at reconsideration of the initial denial of his SSD application, *see id.* at 89, and on February 3, 2021, he signed a "Claimant's Appointment of a Representative" form appointing Dr. Reeve as his representative, *see id.* at 98-101. The instructions for completing that form advised:

> You have the right to appoint a qualified representative of your choice to represent you on any claim or asserted right under any of our programs. For more information on who can qualify to be an appointed representative . . . and other helpful information, or to locate your local field office, you can visit our website at www.ssa.gov/locator. Call us, toll-free, at 1-800-772-1213.

*Id.* at 96.

The Plaintiff, thus, was placed on notice prior to his hearing that he had the right to representation by a "qualified representative" of his choice and told how to contact the SSA for guidance on who could qualify as a representative and how to obtain a list of representatives in his area. As the Commissioner notes, *see* Opposition at 5-6, he demonstrated the capability to understand and follow such directions, having contacted the agency for help filling out forms to apply for SSD benefits, *see* Record at 235.

During the hearing, the ALJ painstakingly laid out the Plaintiff's choices to (1) avail himself of the option to postpone the hearing to obtain representation by an attorney, (2) proceed that day with Dr. Reeve as his representative, which would

4

preclude her from testifying as a witness, or (3) proceed that day with Dr. Reeve as a witness, in which case, because the Plaintiff would be unrepresented, the ALJ would take on additional duties, including taking the lead on questioning and obtaining any missing medical records. *See* Record at 44-52. The Plaintiff asked a number of pointed questions, weighed his options, and conferred with Dr. Reeve before deciding to proceed with Dr. Reeve as his representative, explaining that he did not want to postpone his hearing for four months. *See id*.

The record further indicates that the Plaintiff understood the difference between a representative and a witness. When Dr. Reeve suggested that the hearing go forward and that she serve "as the representative," the Plaintiff agreed. *See id*. at 52. The Plaintiff then questioned whether he could be a representative and Dr. Reeve a witness, to which the ALJ responded, "Yes, you can represent yourself and she can be a witness, or she can represent you and question you." *Id*. The Plaintiff then affirmed that "my doctor will be my representative and I'll be the other guy." *Id*. at 53. In context, the Plaintiff's reference to himself as "the other guy" does not betray confusion between witnesses and representatives, as he now suggests, *see* Statement of Errors at 12, but, rather, that he had chosen to proceed with Dr. Reeve as his representative and himself as the witness.

Finally, the ALJ apprised both the Plaintiff and Dr. Reeve of the necessity to prove that the Plaintiff was disabled as of his date last insured for SSD benefits, March 31, 2018. *See* Record at 56-57. Dr. Reeve duly commenced questioning the Plaintiff about his functioning as of the time he stopped working as a merchant

5

marine in 2012 and then asked the ALJ if he wanted to hear about "more recent functioning attempts." *Id*. 58-62. The ALJ clarified that because his focus was on "the time frame of the date [the Plaintiff] was last insured, . . . the first quarter of 2018 is the most important part to me." *Id*. at 62. Both Dr. Reeve and the ALJ then questioned the Plaintiff about his functioning during that time. *See id*. at 62-72. Dr. Reeve affirmed her understanding of the importance of the date last insured when, at the close of the hearing, the ALJ asked her whether she had anything to add. *See id*. at 72. She responded, "I think you have a pretty good picture of the progression of [the Plaintiff's] illness and his current abilities, and I don't think I have anything to add that would bring more clarity to the 2018 timeframe," which she described as "basically on the record." *Id*.

The Plaintiff identifies no additional evidence (including testimony) or arguments that would have been offered had he been represented by an attorney rather than Dr. Reeve. *See* Statement of Errors at 5-13.[2]

---

[2] At oral argument, the Plaintiff's counsel cited three cases for the proposition that remand is required based on inadequate representation: *Kearney v. Astrue*, 730 F. Supp. 2d 482 (E.D.N.C. 2010), *Baez v. Astrue*, 593 F. Supp. 2d 310 (D. Mass. 2009), and *Arms v. Gardner*, 353 F.2d 197 (6th Cir. 1965). All three cases are distinguishable. In *Kearney*, the court held that a claimant was prejudiced by either his non-attorney representative's failure to submit evidence concerning his adaptive functioning prior to age 22 or "the ALJ's failure to adequately develop the record by attempting to ascertain whether such evidence existed or not." *Kearney*, 730 F. Supp. 2d at 484. In *Baez*, in the context of addressing a claimant's request for attorney fees pursuant to the Equal Access to Justice Act, the court noted that the claimant's representative's "ineffectiveness, standing alone," had "necessitated remand" when the representative was "not at all prepared to develop the record, did not adequately address the ALJ's inquiries and, in fact, led the ALJ in the wrong direction" by stating that the claimant sought only SSD benefits when the claimant had applied for and was receiving Supplemental Security Income benefits. *Baez*, 593 F. Supp. 2d at 313-15 (cleaned up). In *Arms*, the court remanded a claimant's case for a new hearing when the claimant's attorney "took no part in the examination of witnesses, offered no testimony on [the claimant's] behalf and gave [the claimant] no apparent legal assistance in the preparation of the case." *Arms*, 353 F.2d at 199. In this case, by contrast, the ALJ confirmed that the record was complete, and both he and Dr. Reeve questioned the Plaintiff concerning his functioning during the relevant time frame. *See* Record at 45-46, 59-72.

The Plaintiff, accordingly, fails to make the showing of "unfairness, prejudice or procedural hurdles insurmountable by laymen" that is required to obtain remand on the basis of "want of representation." *Evangelista*, 826 F.2d at 142 (cleaned up).

### B. ALJ's Handling of Opinion Evidence

The Plaintiff also seeks remand on the basis that the ALJ's evaluation of the opinion evidence of record and his impairments was unsupported by substantial evidence. *See* Statement of Errors at 13-16. I find no error.

The Plaintiff first contends that the ALJ mischaracterized the opinion of agency nonexamining consultant Mary Alyce Burkhart, Ph.D., on reconsideration as supporting a finding of nonsevere anxiety and depression as of March 31, 2018. *See id.* at 14-15. He posits that Dr. Burkhart, like her colleague Brian Stahl, Ph.D., on initial review, actually found the evidence insufficient to evaluate the Plaintiff's mental functioning as of that date. *See id.* Yet, Dr. Burkhart found medically determinable impairments under Listings 12.04 (depression) and 12.06 (anxiety) that she characterized as imposing mild mental limitations and as "non-severe." Record at 81. The ALJ, thus, supportably relied on the Burkhart opinion to find medically determinable but nonsevere mental impairments.[3]

The Plaintiff next challenges the ALJ's rejection of two opinions by Dr. Reeve on the basis that the ALJ "acknowledged . . . twice on the record during the hearing"

---

[3] The Plaintiff further notes that he had claimed his mental limitations were caused by bipolar disorder, post-traumatic stress disorder, and attention deficit disorder, not anxiety and depression. *See* Statement of Errors at 15; Record at 222, 291, 443. However, a "diagnosis, standing alone, does not establish the severity of the disease nor the limitations that result for a particular individual." *Faye L. R. v. Saul*, No. 2:20-cv-00023-NT, 2021 WL 425984, at *2 (D. Me. Feb. 7, 2021) (rec. dec.) (cleaned up), *aff'd,* 2021 WL 1135017 (D. Me. Mar. 24, 2021).

that his evaluation of those opinions would be "materially influenced by Dr. Reeve's role as [the Plaintiff's] representative during the hearing." Statement of Errors at 15. Yet, while the ALJ did warn both the Plaintiff and Dr. Reeve that her service as his advocate at hearing would "detract[] from the impartiality of any opinions" she had expressed, Record at 48; *see also id.* at 44, he did not rely on her dual role in discounting her opinions that the Plaintiff (1) had "marked or extreme" functional limitations, (2) could not "get through a routine job application and interview process," and (3) was "unable to work on a regular and sustained basis" as a result of his mental impairments, *id.* at 35.

Instead, he discounted those opinions because they addressed the Plaintiff's current level of functioning, not his level of functioning during the time frame prior to March 31, 2018, and were at odds with Dr. Reeve's own notes from that time period. *See id.* The ALJ explained, for example, that those notes revealed a "lack of any treatment whatsoever for lengthy periods of time," "generally indicate[d] that medication [was] effective in managing the [Plaintiff's] mental impairments," and revealed "sufficient functioning to complete daily tasks and to take care of his mother with Alzheimer's." *Id.*[4] The Plaintiff does not contest that those findings are supported by substantial evidence. *See* Statement of Errors at 13-16. The ALJ, thus, supportably discounted the Reeve opinions.

---

[4] Indeed, the ALJ emphasized that his decision was "driven by the lack of any substantial evidence of severe impairment up to and including the date last insured of March 31, 2018," and encouraged the Plaintiff, "[b]ased on the testimony and documentary evidence about current functioning and lack of assets," to apply for Supplemental Security Income benefits, "which unlike the current claim can consider current functional status." Record at 35.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be *AFFIRMED*.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: June 6, 2023

/s/ Karen Frink Wolf
United States Magistrate Judge